Opinion of the Court.
THIS is a bill brought to sustain an entry against junior entries, with elder grants; so that the validity of the complainant’s entry is one of the material questions presented, while those of the defendants need not be The is as follows:
“ Samuel Meredith withdraws his entry of 2,050 acres, on the waters of Floyd’s Fork, and locates the same on the lower side of the Beech Fork, and on the upper side of Rolling Fork, at their junction, to run down the said Rolling Fork and up the Beech Fork for quantity. June 21st, 1781. 1,050 acres withdrawn.”
The survey and patent are for 1,000 acres only. The validity of this entry, in its original form, has not been questioned. According to well established principles, it must be sustained. The notoriety of the two large streams named in the entry, is well established by the proof. They unite with each other, and the Rolling Fork takes the name of the stream thus united, to river. Some question seems to be made in the proof, concerning the terms, upper and lower sides. With relation to the respective streams into which the Beech Fork and the Rolling Fork discharge themselves, these expressions are easily understood. There is also an attempt to show that the word, junction, was not usual in ordinary conversation, at the date of the entry. This effort must likewise be unavailing. The place where the two streams, Beech and Rolling Forks, unite, called the Mouth of the Beech Fork, is properly termed their junction, and must be so considered by every person who reads the entry. Nor can there be any *517 doubt about the mode of surveying this entry. It must be extended up the Beech Fork and down the Rolling Fork equal distances, so that a reduced line from each extremity will form the square root of the quantity, when laid in a square. Their lines must be extended at right angles from the two streams, far enough to include the quantity, placing the claim as nearly in a square as the irregular lines formed by the meanders of the two streams will admit.
It seems, that the authority given by the warrant continued in force until the principal surveyor had examined, approved and recorded the survey.
Where there is attached to an entry a note of part’s being withdrawn, and that note is without date, it seems that it will be considered as bearing date with, & composing a part of the entry, operating as a diminution pro tanto, & therefore not vitiating the entry.
Where a withdrawal takes place for a part, & the calls of the entry are such that they can be complied with in surveying the remainder, the entry will be good for such remainder.
Where it a appears from the complainant’s own showing that there was such an adverse possession at the time he took a conveyance as to render the deed void, the defendant need not rely on it in his answer.
*517 But there are several objections made to the recovery of the complainant, notwithstanding the validity of his original entry. One of these, which appears to have induced the court below to refuse relief, is, that there was an agreement between George May, as the agent of Meredith, and Isaac Hite, who held the entries now claimed by the defendants below, that the claim should not be surveyed to cover the entries of the defendants, which were smaller in quantity, and that they should be excluded; and accordingly surveys were executed for the appellees, of their claims, and another on the entry of Meredith, adjoining and excluding the land now in controversy; and afterwards, May or Meredith, the holder of the entry, caused a new survey to be made, including the land in dispute.
The force of this objection is controverted, on the ground that the facts are not sufficiently established. It is in proof, that a certain Philip Phillips, a deputy surveyor, did execute a survey, in part, or perhaps entirely, excluding the land in controversy, when the surveyor of the defendants’ claims was present and surveying theirs; and that both surveyors represented, at that time, that Meredith’s survey was thus made by the directions of George May, who was not present. It is likewise shown that this survey was returned to the office of the principal surveyor, who was the said May; but it was never recorded, and May directed another survey to be made, including the land now in contest, It is further shown, that May acted as the agent of Meredith, in locating and his lands.
Assuming the fact, that May was the agent of Meredith, who did not reside in this country, and that he had ample control over his claims, there is no evidence adduced, that May did agree to, and direct the first survey, or that he had agreed to exclude the entries of the appellees, except what is drawn from the declara *518 tion of Hynes and S. Phillips, the two deputies, and the subsequent admissions and declarations of George May himself. Such declarations and confessions are clearly incompetent evidence against Meredith, or persons claiming under him; for the principle is well settled, that although the declaration of an agent, acting and speaking within the scope of his authority, may be given in evidence to charge the principal, as part of the res gestœ, yet the declarations and admissions, made at other times by the agent, are inadmissible. To do so, would affect the principal by testimony not on oath; and, in the present case, he would be subjected to the confessions of an individual, who, for aught that appears in the cause, was a competent witness to prove the facts were so, which would be better evidence than his declarations, made without the solemnity of an oath.
If, after the execution of such void deed, & since the passage of the act of 1798 authorising conveyances in such cases, he shall have acquired the same land by descent and release from his co-heirs, his title will be valid.
The proprietor of an equity in lands may, by making the holders of the legal title under which he claims, defendants, and manifesting a right against them, sustain a suit against an adversary claimant under a distinct original title.
May himself is made a defendant, in the answer of the defendants below, and is called upon to answer interrogatories touching this matter. His answer discloses but little; but, be that little what it may, such an answer is no evidence against the complainant below, who never made him a party, and could not cross-examine him. It is true, that the defendants moved to dismiss their answer as to May, for the purpose of making him a witness, and this motion was resisted by the complainant, and overruled by the court.
We perceive no propriety in making May, who was alleged to be the mere agent of a party, a defendant at first, and there was less reason for retaining him as such, at the instance of the complainant, who could expect no redress against him, and had no controversy with him. it would have been certainly right to permit the defendants to dispose of their own complaint against May, and let him out of court, especially after they discovered that they had no cause for bringing him in. But after all, the court below granted leave to take his deposition, subject to exceptions at the hearing of the cause. The deposition was not taken and presented at the trial, and of course the defendants below must be presumed to have waived it, and cannot now claim the right of having the cause opened to take the deposition, especially as they have failed to produce the highest degree of evidence placed within their power.
Thus far we have supposed that May was the agent. But this fact is not made out by competent evidence; *519 it is only shown that he acted as such, that he was understood to be so, and stated himself to be such. The same objections lie against the propriety of this evidence, which are made against the proof of his acts, with regard to surveying this claim the first time. There is nothing to show that Meredith, the owner of the entry, ever appointed him, or recognized him as agent; and to subject Meredith to his acts and declarations, would affect him by all consequences of res inter alios actœ, without any power to relieve against it himself. The only act of May which Meredith recognized, as shown in the cause, is the last survey, to which he still adheres. Besides, there is no evidence measuring the extent of May’s supposed authority. We cannot tell whether it reached to the extent of allowing him to abandon and leave out part of the land properly included by his entry, and to exchange it for other lands, as is contended by the proof in the cause. We, therefore, cannot conceive that this first ground furnishes any bar to the relief claimed in the bill.
It is further objected against the claim of the appellant, that as there is no proof that a previous survey was executed, and that as the warrant was merged in that survey, the subsequent survey, covering the land in dispute, was without authority and void. The warrant is an authority to the surveyor to act, and it has been decided by this court, in conformity to sound principles of law, that this authority being once executed, is at an end, and that a new attempt to execute it was void. It has never, however, been decided, at what precise point this authority to the surveyor ends, whether at the execution of the survey upon the ground, or when it is examined and recorded, or after the survey is returned to the register. It would seem to result, however, from the soundest reason, that the authority could not end and be fully executed, until the surveyor had done every act which the law authorised him to do under the warrant. Then, and not until then, is the trust reposed in him by law, at an end. The law of Virginia under which the claim of the complainant originated, (1 Litt. 412,) after directing the mode and manner of executing the survey upon the ground, and making out and delivering to the party the plat and certificate, provides, “ that the said plats and certificates shall be examined and tried by the said *520 principal surveyor, whether truly made and legally proportioned, as to length and breadth, and shall be entered, within three months at farthest after the survey is made, in a book, well bound, to be provided by the court of his county, at the county charge.”
It would be useless for the principal surveyor to examine, if he could not correct, or have the surveys corrected. It would be futile for him to try the surveys, and have no power to condemn them. If he had no power to correct or condemn, the acts themselves would be mere idle and formal ceremony. If he had power to condemn, and yet the warrant was extinguished by the work on the ground, the party would be in a hopeless situation as to his land. The law gave him no means of acquiring a new authority to the surveyor, and the old one being extinct, his claim would be at an end. It is, therefore, evident that the principal surveyor could condemn, and have the surveys corrected, before he placed them on his record; and that if he approved, he could record them, and terminate his authority. If he directed them to be corrected, he and his deputies must be presumed to have adequate power to change their shape and figure, in such form as he should direct; and this they might do under the old warrant.
There is, then, in this cause, no evidence that George May, the principal surveyor, ever examined, tried or approved and recorded the first survey. Indeed, the contrary is pretty evident. He declared he would have it otherwise done, and whether his friendship or agency for Meredith, if he had any, or his official duties, prompted him to do it, it is immaterial. It was what the law authorised him to do, and if the entry was violated by the survey, he did right in doing so, when there is no legitimate proof that he had authority from Meredith to barter away part of his entry, or that he had ever in fact agreed to exchange the right of surveying the land in contest, for a location of other land, as is contended in the answer. We, therefore, conceive that the execution and return of the former survey by the deputy, without proof of its being examined, tried and recorded by the principal surveyor, ought not to defeat the relief sought in this cause.
It is further objected, that the withdrawal which appears annexed to the close of the entry, renders it un *521 certain, and ought to defeat it. There is nothing in the record, by which we can certainly ascertain the date of the withdrawal. It reads as composing a part of the original entry. If it is taken as part of it, it could deceive or mislead no one. It stands, then, as an entry of 1,000 acres only, and, as such, could be surveyed in compliance with all the calls, and would be a good entry to that extent. If this withdrawal took place after the survey was completed, as the survey was for 1,000 acres only, it must fix the choice of the party to that extent; and the remaining 1,050 acres ought to be taken as the part withdrawn, and of course the entry must remain good for that portion of the 1,000 acres surveyed rightly. If, however, as the bill seems to admit, this withdrawal took place after the date of the entry, and before the completion of the survey, which is most probably the fact, the rule adopted by this court in the case of Preeble vs. Vanhoozer, 2 Bibb 118, will apply, and sustain the entry. In that case, the principle is recognized, that where a withdrawal takes place, of part, and the calls of the entry are such that they can be complied with in surveying the remainder, the entry shall be good for such remainder. In this case, the entry is so framed that its calls suit 1,000 acres only, as well as they did the original quantity; and accordingly it is deemed a good entry to that extent, and the withdrawal ought not to defeat it.
Some attempt is made in the proof to contest the existence and identity of the complainant’s survey, as he alleges it to be. As this is a question of fact purely, suffice it to say, without reciting the proof, that we deem the correspondence of the lines and corners found on the ground long since this controversy commenced, with the calls of the patent, which attaches itself to such remarkable and notorious natural objects as the junction of the two streams, greatly preponderates over the negative testimony adduced by the appellees; of course, this attempt must be deemed unsuccessful.
One other objection is made to the success of the appellant. Samuel Meredith, the holder of the entry, in the year 1790, conveyed the land to his son, the present appellant, while it was in the adverse possession and occupancy of the appellees, or those under whom they claim. This matter is not pleaded or relied upon in the but the and both show *522 that the residence or plantation of Kennedy, one of the ancestors of the appellants, was included, and the same occupancy is complained of when the bill was filed; of course, the presumption is violent, that the possession was adverse when the conveyance was made.
As the design of pleading is to show what does not appear by the pleadings of the opposite party, and what sufficiently appears need not be set out in the form of a plea, it may be assumed, that the fact of adverse possession at the date of this deed is sufficiently made out, and the appellants have a right to avail themselves of it, without inserting it as a defence in their pleadings.
Whatever the law may be since the passage of our act of assembly in 1798, it was too well settled, at the date of this conveyance, to need the citation of authority to prove it, that a person out of possession could not convey; and if he did, the deed passed no title. But it is equally clear, that although the grantee in such a deed could support no suit, on account of a want of title; yet the grantor could sustain his action or suit to recover the land, the conveyance notwithstanding, and he did not forfeit his title by having made such void conveyance. It is, therefore, evident, in the present case, that the title remained with Samuel Meredith, the original patentee, until long after the commencement of this suit, and that the present appellant could not sustain it. But, pending this controversy, Samuel Meredith, the patentee, died, and the present appellant is one of his heirs at law, and can take the title of his part or proportion by descent, since the death of his father, whatever might have been the effect of the deed made in his lifetime; and he has amended his bill suggesting these facts, and making his co-heirs parties. They have answered, acknowledging the intention of their ancestor to give the land to William, the appellant, and declaring their readiness to convey whatsoever has descended to them, of the land in controversy. In this attitude, it is contended he cannot support his bill, not having the whole estate, and that the ancient contract between the appellant and his ancestor, is voluntary, and founded on a good consideration only, and such as a court of equity will not enforce. To this it may be replied, that we see no objection against the bare holder of an equity by executory contract being allowed to support his bill against an adverse claim *523 ant, making the holder of the legal estate a party, and showing that there is no obstacle to prevent his recovering the legal estate. The chancellor, in such a case, may decree the legal estate to be conveyed to him, and then give him relief against the adverse claim. The appellant holds an individual interest in the land in question, since the death of his father, and his co-heirs acknowledge his equity in, and right to the residue. There was, then, nothing to prevent a decree against the co-heirs for the entire estate; and also, against the adverse claimants for their title.
As to the contract being such an one as equity will not enforce, this is a matter between the appellant and his co-heirs, and does not lie in the mouths of adverse claimants. These co-heirs, by their answer, have removed all objections to a decree against them. It results, however, from these principles, that the appellant long had his bill in court, when he could not sustain it, for want of title. This need not prevent his recovery now, but ought to charge him with the costs in the court below, up to the time of filing his amended bill. The decree of the court below is, therefore, deemed erroneous, in refusing relief which ought, according to this opinion, to have been granted.
Decree reversed.